## CHERNUS v. UNITED STATES.
### No. 47691.

Court of Claims.
March 1, 1948.

Karl E. Holderle, Jr., of St. Louis, Mo., for plaintiff.

S. R. Gamer, of Washington, D. C., and Peyton Ford, Asst. Atty. Gen., (Gaines V. Palmes, of Washington, D. C., on the brief), for defendant.

Before JONES, Chief Justice, and LITTLETON, WHITAKER, MADDEN, and HOWELL, Judges.

MADDEN, Judge.

The Government has demurred to the first count of the plaintiff's petition. The petition alleges that the plaintiff, jointly with one Palumbo who later assigned his interest to the plaintiff, made a contract to rebuild and repair certain levees in the State of Illinois. At the time the Government's invitation for bids was issued, and until the time for the making of the contract, the site of the work was inundated by floodwaters, so that no independent investigation of the quantities of earth to be moved could be made. The specifications included in the invitation for bids said—

"1–05 Quantities.—The following estimate of quantities is given only to serve as a basis for comparison of proposals and for determining the estimated amount of the consideration of the contract. Within the limits of funds available, the contractor will be required to perform at the contract unit price for the respective item such quantities of work as may be necessary to complete the work specified in paragraph 1–02 hereof, be they more or less than the amounts herein estimated."

Then followed a tabulation showing the yardages between named stations, which yardages added together totaled 567,000. Then followed these paragraphs:

"1–03 (a) General Description.—The levee work contemplated under this contract will consist of placing approximately 567,000 cubic yards of earth in rebuilding levees at locations where they have broken as a result of recent flood waters. The levee breaks shall be rebuilt from natural materials obtained from riverside and landside borrow areas; all as shown on the drawings.

"1–04 (a) Drawings.—The work shall conform to the drawings marked "Harrisonville and Ivy Landing Drainage and Levee District, Monroe County, Illinois." These drawings form a part of these specifications and are on file in the office of the District Engineer, St. Louis, Missouri.

| Title | Drawing No. |
|---|---|
| Proposed Repair of Levee Breaks, Sheet No. 1 of 2 Sheets | 347.1401 |
| Proposed Repair of Levee Breaks, Sheet No. 2 of 2 Sheets | 347.1402 |

"The above listed drawings represent the best available information as to existing conditions and the nature and extent of the work required, as determined from surveys and inspections made at the site; however, as a result of floodwaters, the exact conditions and nature and extent of work cannot be guaranteed and may vary considerably from those shown. Discrepancies between the actual conditions en-

countered and those indicated on the drawings will not be considered as the basis of a claim for damages or increased unit costs for doing the work.

"1–04 (b) The work shall also conform to such other drawings relating to the work as may be exhibited in the office of the Contracting Officer prior to receiving proposals and to such additional drawings in explanation of details or modifications as may be furnished by the Contracting Officer from time to time during construction, including detailed cross sections and such changes as he may consider necessary because of special conditions encountered during prosecution of the work."

The contract was a unit price contract, that is, payment was to be made at a specified price per cubic yard for the earth placed by the contractor. The plaintiff, relying upon the representations of the Government that approximately 567,000 cubic yards of earth were to be moved, contracted with others for machinery adequate to do the work within the time agreed upon in the contract. He completed the work within the agreed time, but, as it turned out, he moved only 354,746 cubic yards of earth. The equipment for which he had contracted to move the estimated larger amount of earth was to a considerable extent surplus, and its hiring an unnecessary expense. His items of unnecessary expense attributable to this cause total $19,092.60.

Article 4 of the contract is quoted in a footnote.[1]

The issue presented by the demurrer is similar to that of the case of Peter Kiewit Sons' Co. v. United States, 74 F.Supp. 165, 109 Ct.Cl. 517. In that case, as in this, there was a very large underrun of one kind of work below the amount estimated in the invitation for bids. The effect of the faulty estimate there was to cause the contractor to make a bid of a composite unit price which, because of the underrun of the one kind of work, turned out to be unreasonably low. The specifications in the Kiewit case included a cautionary paragraph to the same effect as paragraph 1–05 quoted above. We held that the petition stated a cause of action; that the parties in making their contract did not intend that the cautionary language of the specifications should turn the process of bidding on a Government contract into a pure speculation. We thought that such a literal interpretation of the contract, in a case where the parties were, obviously, laboring under a mutual mistake as to vital facts when they made it, would, in the particular case, be unfair to the victim of the interpretation, and, in the long run, ruinously costly to the Government. We thought that such an interpretation would undo all the good which other provisions of the contract, particularly Article 4, were carefully worked out to accomplish; that is, to induce bidders not to increase their prices to cover possible misfortunes which might result from unforeseen developments.

We think that the language of paragraph 1–04 (a) of the specifications, not present in the Kiewit case, supra, is not sufficient to distinguish that case from this. We think that the number of units of work done and paid for in this case varied more than "considerably" from the estimated amounts which both parties expected to be done.

The Government's demurrer will be overruled. It is so ordered.

---

[1] Article 4. Changed conditions.— Should the Contractor encounter or the Government discover during the progress of the work subsurface and/or latent conditions at the site materially differing from those shown on the drawings or indicated in the specifications or unknown conditions of an unusual nature differing materially from those ordinarily encountered and generally recognized as inhering in work of the character provided for in the plans and specifications, the attention of the Contracting Officer shall be called immediately to such conditions before they are disturbed. The Contracting Officer shall thereupon promptly investigate the conditions, and if he finds that they do so materially differ, the contract shall, with the written approval of the Secretary of War or his duly authorized representative, be modified to provide for any increase or decrease of cost and/or difference in time resulting from such conditions.