## E. E. BLACK, LTD. AND KUWAYE BROTHERS, INC. A JOINT VENTURE *v.* THE STATE OF HAWAII.

### No. 4617.

MARCH 15, 1968.

RICHARDSON, C.J., MIZUHA, MARUMOTO, LEVINSON, JJ., AND CIRCUIT JUDGE WILLIAM Z. FAIRBANKS IN PLACE OF ABE, J., DISQUALIFIED.

OPINION OF THE COURT BY MIZUHA, J.

This is an appeal from a judgment rendered in the Third Circuit Court which awarded the appellees-contractors the sum of $30,777.60 as an adjustment in compensation for work done pursuant to a construction contract.

The appellant-State entered into a contract with contractors for the construction of a section of the Hawaii Belt Road. In the bid, the contractors proposed to furnish 17,280 tons of filler at $7.04 per ton for the construction and completion of the entire section. This was based upon the State's estimated quantity of filler that would be needed for the completion of the project. Relying upon this estimation, the contractors constructed a plant and brought over equipment to process filler to that capacity. During the course of the construction, it became apparent that the quantity of filler had been overestimated. Only 10,689 tons of filler were actually used, 40% less than the estimate of 17,280 tons. As a result, the contractors' cost per ton of filler greatly exceeded the $7.04 per ton estimate. The contractors claimed

additional compensation under Article 4.3 (1) of the Standard Specifications for Road and Bridge Construction, May, 1957. The article provides for an adjustment in compensation in the event of an increase or decrease of more than 25% of the contract amount of such item.[1]

The State contends in its brief that the contractor was precluded from asserting an adjustment in compensation under Article 4.3[2] because the State did not issue any written order decreasing the amount of filler to be used. Despite this contention, the State conceded during oral argument that an oral order was given to the contractor.

The question is whether, in this case, a written order is necessary where there is a reduction of more than 25% in the amount of filler to be used as estimated by the State.

The State conceded it directly supervised and controlled

[1]Article 4.3 (1) provides:

"In the event that the Contractor is ordered to make alterations involving an increase or decrease in the quantity of any item or portion of the work or to omit portions of the work, no adjustment will be made for any increase or decrease in the cost of any given item unless the quantity of such item is increased or decreased more than twenty-five percent (25%) of the contract amount of such item. If an increase or decrease is made which, together with previous orders or agreed changes in quantity, increases or decreases the amount of any item more than twenty-five percent (25%) of the contract amount thereof, an adjustment of compensation will be made. Such adjustment will be based on the increased or decreased actual cost per unit of said item or items to the Contractor, or at the option of the Department, such adjustment will be made on the basis of force account. In any case, for increased quantities such adjustment shall apply only to the excess of the increase over twenty-five percent (25%) of the original contract amount of such item or items. The Engineer shall determine the amount of such adjustment and his decision shall be final and conclusive between the parties.

"Before work is started on any alteration requiring an adjustment in compensation, due to increased quantities, a supplemental agreement setting forth the necessity for the change and the basis of adjustment of compensation shall be prepared by the Engineer and signed by both the Contractor and the Engineer."

[2]Article 4.3 provides:

"Alterations — The Department reserves the right to increase or decrease the quantity of any item or portion of the work or to omit portions of the work as may be deemed necessary or advisable by the Engineer; also to make such alterations or deviations, additions to, or omissions from the plans and specifications as may be determined during the progress of the work to be necessary and advisable for the proper completion thereof. Upon *written order* of the Engineer, the Contractor shall proceed with the work as increased, decreased, or altered." (Emphasis supplied.)

the application and quantity of the filler used, and also that there was a reduction of over 25% from the original estimate. Nevertheless, the State contends that a written order must be given before contractor may recover, despite the concession that an oral order was given. There may be circumstances in the application of Article 4.3 wherein a written order is necessary, but that is not evident here. In view of the fact that the State failed to designate the transcript of the trial as part of the record in this appeal, we do not know the circumstances that led to the oral order. It is apparent that in this case, the written order as required by Article 4.3 (1) was waived by the State, and the argument that it is necessary before liability can accrue is specious. It is the opinion of this court that a reduction in quantity of filler from 17,280 tons to 10,689 tons in this contract is an alteration within the purview of Article 4.3.

In cases where there was a reduction in quantity of materials actually used, the courts have held that a contractor was entitled to recover the increased cost of production as a result of a change. *Peter Kiewit Sons' Co.* v. *United States*, 74 F. Supp. 165 (Ct. Cl. 1947), held that a contractor was entitled to obtain an equitable adjustment of amount due under a contract with the Government for grading, extension, and reconstruction of an airfield runway where there was a substantial reduction of excavation work. The Government notified the contractor that there would be a reduction, but there was no mention whether the notification was oral or written. Nevertheless, notification was given and the Government was held liable for the increased cost resulting from a change in volume from the estimated volume given to the contractor as a basis for computing its bids. Similarly in *Chernus* v. *United States*, 75 F. Supp. 1018 (Ct. Cl. 1948), a contractor entered into a contract with the Government to rebuild and repair levees. Relying upon the Government's representation that approximately 567,000 cubic yards of materials were to be moved, the contractor incurred unnecessary expenses when it removed only 354,746 cubic yards. A change order was not mentioned, but the court held that the contractor was entitled to recover.

The State further argues that the language of Articles 2.1, 2.2, and 2.3,[3] and the proposal and contract forms when read together with Article 4.3 require the conclusion that Article 4.3 is inapplicable to the case at bar. The State contends that approximate estimates are not binding upon the State, since it is indicated in "clear and unequivocal language that the quantities given are estimates of the Apellant and is not a guarantee on Appellant's part that the Contractor will receive compensation based upon the estimated quantity multiplied by the unit price bid."

We do not agree. In *Peter Kiewit Sons' Co.* v. *United States, supra,* p. 167, the government had opposed the increase relying on Section 1.05 of the contract pertaining to quantities which provided:

" 'The estimate of quantities of work listed in the Schedule of Items to be performed under these specifications is given only to serve as a basis for canvassing offers and for determining the approximate amount of the consideration of the contract. Within the limits of funds available, the contractor will be required to complete the work * * *, be the required quantities more or less than the amounts estimated.' "

But the Court said at p. 168:

"The Government relies heavily upon the provision in

---

[3]Articles 2.1, 2.2, and 2.3 provide:

"2.1 *Contents of Proposal Forms—Prospective bidders will be furnished* with proposal forms which will state the location and description of the contemplated construction and will show the approximate estimate of the various quantities and kinds of work to be performed or materials to be furnished, * * *.

"2.2 Approximate Estimate—The quantities given in the notice to contractors, proposal and contract forms are approximate only, being given as a basis for the comparison of bids, and the Department does not, expressly or by implication, agree that the actual amount of work will correspond therewith, * * *.

"2.3 Examination of Plans, Specifications, Special Provisions and Site of Work—The bidder shall examine carefully the site of the work contemplated and the proposal, plans, specifications, and contract forms therefor. It will be assumed that the bidder has investigated and is satisfied as to the conditions to be encountered as to the character, quality, and quantities of work to be performed and material to be furnished and as to the requirements of these specifications, the special provisions, and the contract."

Section 1.05 of the specifications, which we have quoted above. This section is found in many Government contracts, and it means that estimates made in invitations for bids for contracts which are to be paid for on a unit price basis are only estimates and not guaranteed amounts. But it certainly does not mean that Article 4 of the contract which promises a modification of the contract to conform to unforeseen subsurface or latent conditions, 'or unknown conditions of an unusual nature, differing materially from those ordinarily encountered \* \* \*' is to be canceled out of the contract. Neither does it mean that all considerations of equity and justice are to be disregarded, and that a contract to do a useful job for the Government is to be turned into a gambling transaction."

*See Chernus* v. *United States, supra,* p. 1019; *H. L. Yoh Co.* v. *United States,* 288 F.2d 493 (Ct. Cl. 1961) ; *Fehlhaber Corp.* v. *United States,* 151 F. Supp. 817 (Ct. Cl. 1957) . *See also* 2 McBride and Wachtel, *Government Contracts,* § 13.70.

Judgment affirmed.

*Arthur T. Murakami,* Deputy Attorney General *(Bert T. Kobayashi,* Attorney General, with him on the briefs) for defendant-appellant.

*J. Garner Anthony* and *Arthur B. Reinwald (Robertson, Castle & Anthony,* of counsel) for appellees.